1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                        **EASTERN DISTRICT OF CALIFORNIA**

10

11  CHRISTINE MARQUEZ,                        **1:12-cv-00778 GSA**

12              Plaintiff,

13         v.

14  CAROLYN W. COLVIN, Commissioner
    of Social Security                        **ORDER REGARDING PLAINTIFF'S**
15                                            **SOCIAL SECURITY COMPLAINT**
              Defendant.
16

17

18

19                        __BACKGROUND__

20         Plaintiff Christine Marquez ("Plaintiff") seeks judicial review of a final decision of the

21  Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for

22  Disability Insurance benefits and Supplemental Security Income payments pursuant to Titles II

23  and XVI of the Social Security Act.[1]  The matter is currently before the Court on the parties'

24  briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United

25

26

27  _____
    [1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule
28  25(d) of the Federal Rules of Civil Procedures, Carolyn W. Colvin is substituted for Michael J. Astrue as the
    defendant in this action.

States Magistrate Judge.[2]

## **FACTS AND PRIOR PROCEEDINGS**[3]

In 2007, Plaintiff filed an application for disability insurance benefits, alleging disability beginning February 1, 2006.  AR 103-105.  Plaintiff's application was denied initially and on reconsideration; Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ").  AR 52-62, 66-67.  ALJ Laura S. Havens held a hearing and issued an order denying benefits on March 3, 2010, finding Plaintiff was not disabled.  AR 14-21, 26-44.  On March 12, 2012, the Appeals Council denied review.  AR 1-4.

1.     **Hearing Testimony**

ALJ Havens held a hearing on October 29, 2009 in Fresno, California.  Plaintiff appeared and testified; she was assisted by attorney Keith MacKenzie.  Vocational Expert ("VE") George Meyers also testified.  AR 26-44.

(a)     *Plaintiff's Testimony*

Plaintiff was fifty years old at the time of the hearing.  AR 29.  She is a high school graduate and completed vocational training in cosmetology.  AR 29-30.  Plaintiff lives by herself in an apartment.  AR 31.  She does not drive because her license was suspended in 2006.  AR 32.

Plaintiff goes to the doctor approximately every six weeks and sees Mr. Kitchell, a physician assistant, at McHenry Medical.  AR 33-35.  Plaintiff suffers from diabetes, arthritis, and psoriasis.  AR 30-31.  She has also had several toes amputated.  AR 36.

During 1984 to 2007, Plaintiff worked as a cosmetologist.  AR 31.  In February 2006, her first toe was amputated.  AR 30.  She tried to work part-time for approximately another year, but after several of her other toes were amputated, the neuropathy in her feet became more painful and ulcers in her foot became infected.  AR 37.  She stopped working in April 2007.  AR 30.

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 9 & 10.)
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

As of the date of the hearing, four toes on Plaintiff's left foot and the big toe on her right foot had been amputated.  AR 30.  The ulcer on her foot is now closed, but the doctor is concerned that it may reopen.  AR 40.  Plaintiff  believes she is no longer able to work as a cosmetologist because blood does not circulate to her foot.  AR 37.

In addition to difficulties with her feet, Plaintiff also suffers from psoriasis which she contracted after experiencing several stressful life events.  AR 41.  When the psoriasis started, Plaintiff took ten milligrams of Methotrexate five to six days a week.  AR 41.  Plaintiff no longer takes this medication due to her liver.  AR 41.  Currently, Plaintiff takes Pristiq, Lisnopril, Glyburide, Aspirin, Metformin, and Hydrocodone.  AR 34, 186.  While taking the medications, Plaintiff experiences dry mouth, poor concentration, dizziness, drowsiness, fatigue, and nausea.  AR 34-35.

The psoriasis affects Plaintiff's ability to go out and interact with others.  AR 41.  When she goes out she feels "diseased" because the psoriasis is all over her body and people think it is infectious.  AR 41.  Her physical condition has resulted in depression and anxiety.  AR 39.  She isolates herself from others, is less trusting, and sleeps frequently.  AR 39.  Other than going to the doctor and seeing a movie once or twice a month, Plaintiff does not go out because she is unable to walk and needs a wheelchair.  AR 39.  Plaintiff's depression also affects her concentration and memory; she keeps notes all over her house, in her purse, and on her refrigerator to remind herself of things.  AR 40.

During a typical day, Plaintiff wakes up at six-thirty in the morning.  AR 31.  She reads the newspaper and watches television four to six hours a day.  AR 30, 32.  Plaintiff does her own laundry and can dress and bathe herself.  AR 31.  She sometimes does chores, washes the dishes, and mops or sweeps, but she does not exercise or grocery shop.  AR 31-32.  She does not have any hobbies.  AR 32.  Plaintiff has problems eating because she can only eat diabetic foods,

which she cannot always obtain, or she has to wait until someone can go to the store for her.  AR 33.  She has problems sleeping and only sleeps for an average of four hours.  AR 33.

Plaintiff can walk or stand for approximately thirty minutes and can sit for about an hour.  AR 35, 38.  Plaintiff is not sure how much weight she can lift.  AR 35.  She feels pain in both of her feet, legs, and arms, but the pain in her left arm is more severe.  AR 35-36.  Plaintiff also experiences sharp pain in her hips.  AR 35-36.  She believes this pain is due to her stance or her foot.   The pain becomes more severe the longer she stands or walks.  AR 36.  On a scale of one to ten, Plaintiff's pain is a five when she is taking her medication.  AR 36.

**(b)**    ***VE George Meyers' Testimony***

VE Meyers described Plaintiff's past relevant work as a manicurist with a SVP[4] of three, semi-skilled at a sedentary level.  AR 43.

The ALJ asked the VE to assume a hypothetical person of the same age, education, and past relevant work as Plaintiff, who can: sit for six hours; stand for two hours; walk for two hours out of an eight-hour day; occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; and occasionally climb stairs, stoop, bend, and crouch, and never climb ladders.  AR 43.  The VE indicated that such an individual could perform Plaintiff's past relevant work.  AR 43.

In a hypothetical question posed by Plaintiff's counsel, the VE was asked whether the same individual could perform Plaintiff's past relevant work if the individual needed a five minute break to sit down after standing for thirty minutes.  AR 43.  The VE indicated that such an individual could still perform Plaintiff's past relevant work.  AR 43.

**2.**    **Medical Record**

The entire medical record was reviewed by the Court.  AR 190-713.  The relevant medical records are outlined below.

---

[4] "SVP" refers to the Specific Vocational Preparation.

4

    **(a)**       ***Treating Physician and Mr. John Kitchell, Physician Assistant***

On November 4, 2009, the treating physician[5] and Mr. John Kitchell, physician assistant, completed a Medical Report of Physical and Mental Work-Related Impairments. [6] AR 673-677. With regard to Plaintiff's physical work-related limitations, the treating physician noted that Plaintiff's ability to lift and carry are not affected by her impairments. AR 674. Notwithstanding this finding, the treating physician proceeded to identify several limitations. Specifically, he found that Plaintiff could occasionally lift zero to fifty pounds but never lift fifty-one to a hundred pounds; she could occasionally carry zero to twenty pounds, but never carry twenty to a hundred pounds; she could sit for eight hours during a workday without interruption until the third to fourth hour; she could stand for one to two hours during an eight-hour workday with interruption between zero to one hour, and walk for one to two hours during an eight-hour workday without interruption until the first hour. AR 674. The treating physician further opined that Plaintiff must avoid all exposure to vibrations, dryness, and temperature extremes; avoid concentrated exposure to chemicals, dust, fumes, odors, and smoke; and avoid even moderate exposure to noise and wetness. AR 676.

    **(b)**       ***Dr. Miguel Hernandez, Examining Physician***

On October 17, 2007, Miguel Hernandez, M.D., a state agency examining physician, reviewed Plaintiff's medical records and performed a consultative examination. AR 501-505. Dr. Hernandez observed that Plaintiff was in no apparent distress; had normal coordination/gait; did not use an assistive device; was able to walk into the examination room without difficulty; and sat on the table without any problems. AR 502-503. Plaintiff's range of motion was

---

[5] The treating physician's name is illegible, so the doctor is referred to as the "treating physician" throughout this opinion. *See* AR 677. Also, since the treating physician and Mr. John Kitchell both completed the Medical Report of Physical and Mental Work-Related Impairments, this Court refers to both the treating physician and Mr. John Kitchell as the "treating physician."

[6] This evaluation is very comprehensive and identifies several of Plaintiff's limitations. Only the sections relevant to this opinion are outlined in this discussion.

unremarkable.  AR 503.  Dr. Hernandez noted that the second through the fifth digits on

Plaintiff's left foot, and the great toe on her right foot had all been amputated.  AR 504.

However, he found that Plaintiff's strength was 5/5 in the upper and lower extremities and her

grip strength was ninety pounds of pressure bilaterally.  AR 504.  Dr. Hernandez opined that

Plaintiff could stand and walk for about two hours in an eight-hour workday, sit for about six

hours in an eight-hour workday with routine breaks, occasionally lift or carry twenty pounds,

frequently lift or carry ten pounds, and occasionally bend, stoop, and crouch.  AR 504.

### (c)    *Dr. Carmen Lopez, Non-Examining Physician*

On November 5, 2007, Carmen Lopez, M.D., a state agency non-examining physician,

completed a Physical Residual Functional Capacity Assessment.  AR 506-510.  Dr. Lopez opined

that Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten

pounds; stand and/or walk for a total of at least two hours in an eight-hour workday; sit for a total

of about six hours in an eight-hour workday; and push and/or pull without limitations.  AR 507.

The doctor also indicated that Plaintiff could frequently balance, kneel, and crawl; occasionally

climb ramps/stairs, stoop, and crouch; and never climb ladders/ropes/scaffolds.  AR 508.  Dr.

Lopez noted that Plaintiff does not have any manipulative, visual, communicative, or

environmental limitations.  AR 508-509.

### (d)    *Dr. Manolito Castillo, Examining Physician*

On September 23, 2008, Manolito Castillo, M.D., a state agency examining physician,

completed an Adult Psychiatric Evaluation.  AR 640-642.  Dr. Castillo opined that Plaintiff's

affect was euthymic and that her posture, gait, mannerisms, speech, psychomotor activity,

attention span, and social interaction were normal.  AR 641.  He also indicated that Plaintiff was

oriented to the month, date, year, and city; was able to recall seven digits forward and four digits

backwards; could perform simple math; was not easily distracted; and had intact memory.  AR

641. With regard to daily living activities, Dr. Castillo noted that Plaintiff cooks, bathes, watches television, takes care of her personal hygiene, washes dishes, vacuums, sweeps, and does laundry. AR 642.  Dr. Castillo concluded that Plaintiff does not have any significant mental limitations. AR 642.

(e)    *Dr. R. Scott, Non-Examining Physician*

On October 24, 2008, Dr. R. Scott, a state agency non-examining physician, completed a Psychiatric Review Technique form.  AR 643-656.  The doctor indicated that Plaintiff has dysthymic disorder that does not satisfy the diagnostic criteria of an affective disorder.  AR 646. He opined that Plaintiff has mild limitations regarding the restriction of activities of daily living, difficulties in maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace.  AR 653.  The doctor also opined that Plaintiff does not have any limitations regarding episodes of decompensation.  AR 653. Accordingly, Dr. Scott concluded that Plaintiff's depression is non-severe because Plaintiff does not have significant mental limitations.  AR 655.

(f)    *Dr. James Scaramozzino, Examining Physician*

On December 5, 2009, James Scaramozzino, PhD, state agency examining psychologist, completed a comprehensive psychiatric evaluation.  AR 678-684.  Dr. Scaramozzino opined that Plaintiff was not significantly limited in her ability to: (1) understand and remember very short and simple instructions; (2) understand and remember detailed instructions; (3) maintain concentration and attention; (4) accept instructions from a supervisor and respond appropriately; (5) sustain an ordinary routine without special supervision; (6) complete a normal workday and workweek without interruptions at a consistent pace; (7) interact with co-workers; and (8) deal with various changes in the work setting.  AR 684.  The doctor also opined that Plaintiff's daily activities and social functioning are not significantly impaired.  AR 684.  Dr. Scaramozzino noted that Plaintiff's symptom severity was in the low to mild range.  AR 683.

7

### 3.     The Disability Determination Standard and Process

To qualify for benefits under the Social Security Act, Plaintiff must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

> his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work, but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. § 404.1520(a)-(f).  The ALJ proceeds step by step in order and stops upon reaching a dispositive finding that the claimant is disabled or not disabled.  20 C.F.R. § 404.1520(a)(4).  The ALJ must consider objective medical evidence and opinion testimony.  20 C.F.R. §§ 416.927, 416.929.

The ALJ is required to determine (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments;[7] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. 404, Subpart P, Appendix 1; (4) whether the claimant retained the RFC to perform her past relevant work;[8] and (5) whether the

---

[7] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).

[8] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations."  20 C.F.R. § 404.1545.  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

claimant had the ability to perform other jobs existing in significant numbers at the regional and national level.  20 C.F.R. § 404.1520(a)-(f).

### 4.    Summary of the ALJ's Findings and Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 14-21.  More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2006.  AR 16.  Further, the ALJ identified amputation of toes, diabetes, arthritis, and psoriasis as severe impairments.  AR 16-18.  Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 18-21.

Based on a review of the entire record, the ALJ determined that Plaintiff has the RFC to perform sedentary work.  AR 18-21.  Specifically, the ALJ found Plaintiff can occasionally lift and carry twenty pounds; can frequently lift ten pounds; can sit for six hours; stand for two hours; and walk for two hours in an eight-hour workday; can occasionally climb stairs, stoop, bend, and crouch; and never climb ladders.  AR 18-21. After considering all of the above, the ALJ found that Plaintiff could perform her past relevant work as a manicurist.

Here, Plaintiff argues that the ALJ erred by (1) failing to provide specific and legitimate reasons for rejecting the treating physician's opinion, and (2) failing to pose a complete hypothetical question to the vocational expert that included her mental limitations.  (*See* Docs. 16 & 18.)

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards.  *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*  Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

## DISCUSSION

**1.     The ALJ Did Not Provide Specific and Legitimate Reasons for Rejecting Part of the Treating Physician's Opinion**

Plaintiff contends the ALJ gave great weight to the treating physician's opinion but failed to incorporate the doctor's limitations into the RFC.  Specifically, Plaintiff argues the ALJ found she can lift ten pounds frequently but the treating physician opined she could only do so occasionally.  AR 18, 674.  Additionally, the treating physician identified environmental limitations regarding exposure to dust, fumes, odors, smoke, chemicals, dryness, and extreme temperatures which the ALJ never addressed.  (Doc. 16 at 6-8.)  Plaintiff argues that if he ALJ were going to reject these limitations, she needed to provide specific and legitimate reasons for doing so.  Based on these errors, Plaintiff argues that benefits should be awarded pursuant to *Smolen v. Chater*, 80 F. 3d 1273, 1292 (9th Cir. 1996).

In response, the Commissioner argues that the ALJ properly assessed the treating physician's physical limitations when formulating the RFC.  Moreover, and the ALJ was not required to discuss the treating physician's environmental limitations because they are not supported by substantial evidence in the medical record.  (Doc. 17 at 6-11.)

**(a)     *The Legal Standards***

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining

10

physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984).  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

> **(b)**    ***The ALJ's Findings***

In formulating the RFC, the ALJ assessed the medical evidence as follows:

> The [s]tate agency physician determined that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit six hours in an eight-hour workday, stand and walk two hours in an eight-hour workday, is limited to occasional climbing, stooping, and crouching, and should never climb ladders, ropes, or scaffolds.  She based her opinion on a review of the medical evidence, including evidence of the claimant's bilateral toe amputation, which affects her ability to balance, and psoriatic plaques on her left lower extremity, which does not affect any manipulative functions because she had good bilateral grip strength. Great weight is given to the [s]tate agency physician's opinion because it is consistent with the record as a whole, including Dr. Hernandez's examination and the claimant's treating physician's assessment, discussed below.
> The [s]tate agency physician's opinion is supported by the opinion of the consultative examiner, Dr. Hernandez, who opined that the claimant can stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday, lift and carry 20 pounds occasionally and 10 pounds frequently, and is limited to occasional bending, stopping, and crouching.  He based his opinion on his

examination, which revealed that the claimant had a normal gait, good generalized muscle tone throughout both her upper and lower extremities bilaterally, good strength in her upper and lower extremities, and a grip strength of 90 pounds of pressure bilaterally.  Dr Hernandez observed that the claimant walked into the examination room without difficulty and sat on the examination table without difficulty.  Great weight is given to Dr. Hernandez's opinion because it is consistent with his examination and the record as a whole.

A physician assistant, Mr. John Kitchell, and a treating physician opined that the claimant can occasionally lift up to 50 pounds and can occasionally carry up to 20 pounds, can sit eight[ ]hours in an eight-hour workday, stand and walk up to two hours in an eight-hour workday, and occasionally climb and kneel.  He based his opinion on the claimant's toe amputations and foot ulcer.  Great weight is given to the opinion of the claimant's physician assistant and treating physician because it is consistent with the record as a whole.

AR 19 (internal citations omitted).

**(c)**   *Analysis*

Here, it is clear that in the considering of Plaintiff's physical limitations, the ALJ gave all of the doctor's opinions great weight; however, each physician imposed different limitations. The ALJ never addressed these differences, nor did she provide specific and legitimate reasons for rejecting the limitations identified in the treating physician's opinion.  Specifically, the treating physician indicated Plaintiff could lift ten pounds occasionally, but the ALJ found she could do so frequently. AR 18, 674.

The Commissioner argues that the treating physician's opinion regarding Plaintiff's lifting and carrying abilities was ambiguous and the ALJ properly resolved the inconsistencies in the medical record.  (Doc. 17 at 8).  Defendant correctly notes that there is a contradiction between the treating physician's initial assertion that lifting and carrying are not affected by Plaintiff's impairment, and his later restrictions on Plaintiff's lifting and carrying abilities.  AR 674. Moreover, both Dr. Lopez and Dr. Hernandez opined that Plaintiff was able to frequently lift ten pounds. AR 19, 504, 507.  However, the ALJ gave great weight to all of the opinions but never resolved the inconsistencies.  What is more troubling is that the ALJ never addressed the environmental restrictions the treating physician identified which included limiting Plaintiff's

exposure to dust, fumes, odors, smoke, chemicals, dryness, and extreme temperatures.  These limitations could be an impediment to Plaintiff performing her past work as a manicurist.  AR 676.  Other than indicating that she gave great weight to the treating physician's opinion to the extent it was consistent with the RFC, the ALJ failed to provide specific and legitimate reasons for not adopting the other limitations the treating physician identified.  AR 19, 674, 676; *Murray*, 722 F.2d at 502.

The Court is not persuaded by the Commissioner's argument that the ALJ did not assess any environmental limitations because the treating physician's findings are not supported by the medical record.  (Doc. 17 at 9).  The ALJ did not rely on these factors as part of her analysis, and this Court is not permitted to make ad hoc rationalizations for the ALJ.  *Barbato v. Comm'r*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996); *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981).  A reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) *(citing Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)).

Since the ALJ gave great weight to all of the opinions, the Court is unable to assess the reasoning for the limitations.  Moreover, since the RFC provides for frequently lifting ten pounds which contradicts the treating physician's opinion, and the ALJ did not discuss the environmental limitations, the case is remanded to allow the ALJ an opportunity to clarify what limitations are applicable and incorporate any limitations into the RFC.  In doing so, the ALJ shall clearly identify the weight she is giving to each doctor's opinion.

Notwithstanding the above, the Court is not persuaded by Plaintiff's argument that Plaintiff should be awarded benefits under the *Smolen* test.  (Doc. 16 at 7-8).  In *Smolen v. Chater*, *supra*, the Ninth Circuit held that the court may remand "for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there

13

are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence was credited." *Smolen v. Chater*, 80 F.3d at 1292. In this case, Plaintiff properly argues that the ALJ failed to provide any reasons for rejecting some of the treating physician's opinions. (*See* Doc. 16 at 7.)  However, the outstanding issues outlined above must be resolved before a determination of disability can be made.  Additionally, the Court does not agree with Plaintiff's argument that if the treating physician's opinions were adopted, she meets the requirements under the Medical Vocational Guidelines ('the grids') Rule 201.14.  *See*, 20 C.F.R., Part 404, Subpart P, Appendix 2 § 201.14.  Plaintiff claims that because her past relevant work as a manicurist falls at the lowest end of semiskilled work, a determination that transferable skills do not exist can be made without a vocational expert, and she is considered disabled under the grids. However, the record is not clear on this issue and the Court will not make this finding.  Therefore, the case will not be remanded for a calculation of benefits.

## 2. The Hypothetical Question Posed to the VE was Improper

Plaintiff argues the ALJ failed to pose a complete hypothetical to the vocational expert. (Docs. 16 at 8-10.)  Specifically, Plaintiff contends that at step two, the ALJ found she had mild limitations in the areas of activities of daily living, social functioning, and concentration, persistence, or pace, but failed to include these limitations in questions posed to the VE.  (Doc. 16 at 8-10.)  In reply, the Commissioner asserts that the ALJ posed a complete hypothetical to the VE since the question included all of the functional limitations the ALJ found to be supported by substantial evidence.  (Doc. 17 at 11-12.)

A RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule.  Social Security Ruling ("SSR") 96-8p.  The

RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.' " *Robbins v. Social Sec'y Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ was required to consider any medically determinable impairment including severe and non-severe conditions.  20 C.F.R. § 404.1545(a)(2) and § 416.945(a)(2); 20 C.F.R. SSR 96-8.   After finding Plaintiff's medically determinable mental impairment causes only mild limitations and is nonsevere (AR 18), the ALJ specifically states that "the mental residual functional capacity used at step 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments."  AR 18. The ALJ proceeds to note that the RFC reflects the degree of limitation found in the paragraph B mental functional analysis.  AR 18. However, the ALJ never completes the assessment referenced.  Instead, the limitations were excluded from the RFC and the hypotheticals without explanation.

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . . ."  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982).  The VE's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record.  *Embrey*, 849 F.2d at 422.   However, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence.  *Osenbrock v.*

1    *Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).  On remand, the ALJ shall clarify the extent any

2    of the limitations identified at step two are relevant at step four, and incorporate those limitations

3    into the hypotheticals posed to the VE.

4                                      **CONCLUSION**

5

6            Based on the foregoing, the Court finds that the ALJ's decision is not supported by

7    substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for

8    further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter

9    judgment in favor of Plaintiff Christine Marquez and against Defendant Carolyn W. Colvin,

10   Commissioner of Social Security.

11

12

13

14   IT IS SO ORDERED.

15       Dated:   **August 30, 2013**                      **/s/ Gary S. Austin**
                                                UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28